William A. Bacas, Esq. Town Attorney, Lake Luzerne
We acknowledge receipt of your letter as attorney for the town board of the Town of Lake Luzerne. You state that the town highway superintendent, hereinafter referred to as superintendent, who in that town is an elected officer, discharged a highway department employee; the discharged employee then filed an improper practice charge against the town with the Public Employment Relations Board claiming that his discharge was because of his involvement in union organizational activities; he also filed a claim for unemployment insurance, claiming that he failed to go to work on the last week of his employment (after having received notice of termination of employment one week hence) because he was afraid of the superintendent; the superintendent requested the town board to defend the proceedings; the town board was uncertain whether the discharge of the employee was made in good faith and refused to defend the proceedings in spite of the fact that each proceeding named the town as a respondent. You report that the superintendent retained counsel and successfully defended both administrative proceedings and that he now requests reimbursement for his legal expenses so incurred.
You inquire whether the town may reimburse the superintendent under the provision of Town Law § 65 subd. 1.
Each of the two administrative proceedings could have resulted in expense to the town if they had not been defended successfully by the superintendent; back wages, penalties, higher unemployment insurance rates, etc., could have resulted. To that extent the town and its taxpayers would have been injured if no defense had been made. We remark in passing that it is the duty of a municipality to defend a litigation brought against it and a failure to perform that duty can subject the officials responsible for the failure to a taxpayers' action for damages under General Municipal Law § 51.
It appears from other information we have received that the discharged employee also lodged a criminal charge against the superintendent which was ultimately dismissed for lack of evidence. It does not appear that any portion of the legal expense for which reimbursement is requested relates to that aspect of the matter.
The hearing officer of the Public Employment Relations Board found:
 "Except for the timing of the discharge, there is no other probative evidence of a violation of the Act. The charge that Armstrong was threatened for engaging in protected activities is not established by the record. As to his discharge, the stronger inference is that he was dismissed for political and personal reasons unrelated to his efforts to establish a union in the department. Under these circumstances, the charges must be, and hereby are, dismissed in their entirety."
Upon appeal to the Public Employment Relations Board the hearing officer's decision was affirmed. The decision of the Board states, in part:
 "It follows from his [the hearing officer's] conclusion that the Superintendent did not intend to frustrate the organization of a union of Highway Department employees
* * *
 "The argument that the Taylor Law protects political activities, as such, of public employees is rejected. The political right of public employees to support one candidate or another raises questions under the First
and Fourteenth Amendments of the U.S. Constitution, but it is not in and of itself an inherent aspect of the right of public employees to organize or to be represented by employee organizations." (Footnotes omitted.)
The hearing on the discharged employee's unemployment insurance claim resulted in the following opinion by the administrative law judge who heard the case:
 "It was claimant's contention that he failed to report to work after November 15, 1977 when he was advised that his last day of work would be November 22, 1977, because he was afraid of his supervisor. It was his contention that his supervisor threatened him. I find, however, that the facts established claimant was not in fear of his supervisor. The alleged threats by the supervisor were made in the heat of anger. Statements made by both the claimant and the supervisor were angry statements made during the course of argument. The claimant's supervisor is fifty-nine years old and suffers from an arthritic condition. I find it incredible that the fixty-six year old claimant would be in fear of physical danger from the supervisor. I, therefore, find that claimant failed to demonstrate compelling reasons for his abandonment of employment on November 15, 1977. Therefore, since the claimant could have worked until November 22, 1977, his resignation on November 15 was a voluntary resignation without good cause. In view of this determination, it is unnecessary to rule on the issues of misconduct and lack of total unemployment."
The "issues of misconduct and lack of total unemployment" mentioned in the above opinion related to affirmative defenses asserted against the claim for unemployment insurance.
Other than assertions by the discharged employee, which assertions have all been disposed of by tribunals created to hear and determine such issues, there is nothing in the record before us which indicates bad faith or malice on the part of the superintendent or that he was not acting within the scope of his authority.
It appears that the superintendent successfully provided a defense for the town in the two cases which, if not defended, could have resulted in expense to the town.
In our opinion, based on Matter of Hiscox v Holmes, 239 App. Div. 602
(1934), Cahn v Town of Huntington, 29 N.Y.2d 451 (1972) and other similar cases when a town is named as respondent in two administrative proceedings brought to question the manner in which the town superintendent of highways performed his duties and the town refuses to defend the proceedings after the superintendent has requested it to do so, as a result of which the superintendent, through his own attorney, successfully defends the same, the superintendent is entitled to reimbursement for his expenses and reasonable legal fees.